1  PAUL L. REIN, Esq. (SBN 43053)
   CELIA McGUINNESS, Esq. (SBN 159420)
2  CATHERINE M. CABALO, Esq. (SBN 248198)
   LAW OFFICES OF PAUL L. REIN
3  200 Lakeside Drive, Suite A
   Oakland, CA 94612
4  Telephone:    510/832-5001
   Facsimile:     510/832-4787
5  reinlawoffice@aol.com

6  BRIAN GEARINGER, Esq. (SBN 146125)
   GEARINGER LAW GROUP
7  825 Van Ness Ave., 4th Floor
   San Francisco, CA 94109-7891
8  Telephone:    415/440-3175
   Facsimile:     415/440-3103
9  brian@gearingerlaw.com

10 Attorneys for Plaintiffs
   JEAN RIKER and ANNA ALLEN
11
   STEVEN R. BLACKBURN, Esq. (SBN 154797)
12 ANDREW J. SOMMER, Esq. (SBN 192844)
   EPSTEIN BECKER & GREEN, P.C.
13 One California Street, 26th Floor
   San Francisco, California 94111-5427
14 Telephone: 415.398.3500
   Facsimile: 415.398.0955
15 sblackburn@ebglaw.com
   asommer@ebglaw.com
16
   Attorneys for Defendants
17 MSR CLAREMONT RESORT LP dba
   CLAREMONT HOTEL, CLUB AND SPA; and
18 PYRAMID ACQUISITION II
   MANAGEMENT LP
19
                    UNITED STATES DISTRICT COURT
20
                  NORTHERN DISTRICT OF CALIFORNIA
21

22 JEAN RIKER,                              CASE NO.  C09-0764 EMC

23             Plaintiff,                   CASE NO.  C09-3681 EMC

24       v.                                 (Related case)

25 MSR CLAREMONT RESORT LP dba              **Civil Rights**
   CLAREMONT HOTEL, CLUB AND SPA;
26 PYRAMID ACQUISITION II                   **CONSENT DECREE AND**
   MANAGEMENT LP; AND DOES 1-10             **[PROPOSED] ORDER**
27 INCLUSIVE,

28             Defendants.

1

2

3

4

5

6

7

8

ANNA ALLEN,

               Plaintiff,

     v.

MSR CLAREMONT RESORT LP dba
CLAREMONT HOTEL, CLUB AND SPA;
PYRAMID ACQUISITION II
MANAGEMENT LP; AND DOES 1-10
INCLUSIVE,

               Defendants.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

     1.     Plaintiff JEAN RIKER filed a Complaint in this action on February 20, 2009, and plaintiff ANNA ALLEN filed a Complaint in this action on August 12, 2009, each to obtain recovery of damages for her alleged discriminatory experiences, denial of access, and denial of her civil rights, and to enforce provisions of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. sections 12101 *et seq.*, and California civil rights laws against Defendants MSR CLAREMONT RESORT LP dba CLAREMONT HOTEL, CLUB AND SPA and PYRAMID ACQUISITION II MANAGEMENT LP,  relating to the condition of their public accommodations as of July 6, 2008, and continuing.  Plaintiffs have alleged that Defendants violated Title III of the ADA and sections 51, 52, 54, 54.1, 54.3 and 55 of the California Civil Code, and sections 19955 *et seq.* of the California Health & Safety Code by failing to provide full and equal access to their facilities at the Claremont Hotel, Resort and Spa at 41 Tunnel Road, Berkeley, California.

     2.     Defendants MSR CLAREMONT RESORT LP dba CLAREMONT

HOTEL, CLUB AND SPA, and PYRAMID ACQUISITION II MANAGEMENT LP deny the allegations in the Complaints and by entering into this Consent Decree and Order do not admit liability to any of the allegations in Plaintiffs' Complaints filed in this action.  Plaintiffs JEAN RIKER and ANNA ALLEN, and MSR CLAREMONT RESORT LP dba CLAREMONT HOTEL, CLUB AND SPA, and PYRAMID ACQUISITION II MANAGEMENT LP, hereinafter collectively, "the parties," hereby enter into this Consent Decree and Order for the purpose of resolving this lawsuit without the need for protracted litigation and without the admission of any liability.

**JURISDICTION:**

3.     The parties to this Consent Decree agree that the Court has jurisdiction of this matter pursuant to 28 U.S.C. section 1331 for alleged violations of the Americans with Disabilities Act of 1990, 42 U.S.C. sections 12101 *et seq.*, and pursuant to supplemental jurisdiction for alleged violations of California Health & Safety Code sections 19955 *et seq.*; Title 24, California Code of Regulations; and California Civil Code sections 51, 52, 54, 54.1, 54.3, and 55.

4.     In order to avoid the costs, expense, and uncertainty of protracted litigation, the parties to this Consent Decree agree to entry of this Order to resolve all claims regarding injunctive relief raised in the Complaints filed with this Court. Accordingly, they agree to the entry of this Order without trial or further adjudication of any issues of fact or law concerning Plaintiffs' claims for

- 3 -

injunctive relief.  Issues of damages, and attorney fees, litigation expenses, and costs have not been resolved and will be the subject of further negotiation and/or litigation.

WHEREFORE, the parties to this Consent Decree hereby agree and stipulate to the Court's entry of this Consent Decree and Order, which provides as follows:

**SETTLEMENT OF INJUNCTIVE RELIEF:**

5.     This Order shall be a full, complete, and final disposition and settlement of Plaintiffs' claims against Defendants for injunctive relief that have arisen out of the subject Complaints.  The parties agree that there has been no admission or finding of liability or violation of the ADA and/or California civil rights laws, and this Consent Decree and Order should not be construed as such.

6.     The parties agree and stipulate that the corrective work will be performed in compliance with the standards and specifications for disabled access as set forth in the California Code of Regulations, Title 24-2, and the Americans with Disabilities Act Accessibility Guidelines, unless other standards are specifically agreed to in this Consent Decree and Order.

7.     **Remedial Measures:**

a.     Defendants agree to perform corrective work at the Claremont Hotel, Club and Spa, 41 Tunnel Road, Berkeley, California.  The scope of the corrective work agreed upon by the parties is detailed in the list of remedial

- 4 -

measures attached hereto as **Attachment A.**

       b.     Defendants agree to institute written policies and train Claremont Hotel, Club and Spa as delineated in **Attachment B.**

    8.    **Timing of Injunctive Relief:**  For work requiring permits, defendants will complete the remediation listed in Attachment A and institute the Policies listed in **Attachment B** within the time frames delineated in **Attachment C.**  In the event that unforeseen difficulties prevent Defendants from completing any of the agreed-upon injunctive relief, Defendants or their counsel will notify Plaintiffs' counsel, the Law Offices of Paul L. Rein, in writing within 15 days of discovering the delay.  The Parties will negotiate in good faith for thirty days to resolve their differences.  The parties may mutually agree to extend the negotiation period.

    The Parties agree to request that the Northern District Court's ADR office mediate any compliance dispute brought pursuant to this agreement.  Plaintiffs will not unreasonably withhold consent for a reasonable extension of time to complete the remediation, but maintain the right to seek, following the completion of mediation, a motion to enforce this Order, in the event the modifications and corrective work are not completed pursuant to the Schedule.  In the event it becomes necessary for plaintiffs to incur costs and/or attorneys' fees to enforce the provisions of this Agreement, plaintiffs will be entitled to recover their reasonable attorney fees, litigation expenses and costs incurred in negotiating an extension of

- 5 -

time, conducting mediation pursuant to this Agreement, or seeking a motion to enforce this Order.  Any motion to enforce this Agreement will be brought in the court in which this action is currently pending.

Defendants or their counsel will notify Plaintiffs' counsel when the corrective work is completed, and in any case will provide a status report every calendar year beginning January 1, 2011 until the work is completed.

**DAMAGES, ATTORNEY FEES, LITIGATION EXPENSES AND COSTS:**

9.      No agreement has been reached on these issues.  They will be the subject of further negotiation and/or litigation.  The parties jointly stipulate and request that the Court not dismiss the case as these significant issues remain unresolved.

**ENTIRE CONSENT ORDER:**

10.      This Consent Decree and Order and Attachments A, B, and C to this Consent Decree, which are incorporated herein by reference as if fully set forth in this document, constitute the entire agreement between the signing parties on the matters of injunctive relief.  Issues of damages and attorney fees, litigation expenses, and costs are specifically excluded and shall be the subject of further negotiations and/or litigation.

**CONSENT ORDER BINDING ON PARTIES AND SUCCESSORS IN INTEREST:**

11.      This Consent Decree and Order shall be binding on the parties and all

- 6 -

successors in interest.  The parties have a duty to so notify all such successors in interest of the existence and terms of this Consent Decree and Order during the period of the Court's jurisdiction of this Consent Decree and Order.

**MUTUAL RELEASE AND WAIVER OF CIVIL CODE SECTION 1542 AS TO INJUNCTIVE RELIEF ONLY:**

12.    Each of the parties to this Consent Decree understands and agrees that there is a risk and possibility that, subsequent to the execution of this Consent Decree, any or all of them will incur, suffer or experience some further loss or damage with respect to the lawsuit which are unknown or unanticipated at the time this Consent Decree is signed.  Except for all obligations required in this Consent Decree, the parties intend that this Consent Decree apply to all such further loss with respect to the lawsuit, except those caused by the parties subsequent to the execution of this Consent Decree.  Therefore, except for all obligations required in this Consent Decree, this Consent Decree shall apply to and cover any and all claims, demands, actions and causes of action by the parties to this Consent Decree with respect to the lawsuit, whether the same are known, unknown or hereafter discovered or ascertained, and the provisions of Section 1542 of the California Civil Code are hereby expressly waived.  Section 1542 provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER  MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

- 7 -

13.     Except for all obligations required in this Consent Decree, each of the parties to this Consent Decree, on behalf of each, their respective agents, representatives, predecessors, successors, heirs, partners and assigns, releases and forever discharges each other Party, and all officers, directors, shareholders, subsidiaries, corporate affiliates, joint venturers, stockholders, partners, parent companies, employees, agents, attorneys, insurance carriers, heirs, predecessors, and representatives of each other Party, from all claims, demands, actions, and causes of action of whatever kind or nature, presently known or unknown, arising out of or in any way connected with the lawsuit.

**TERM OF THE CONSENT DECREE AND ORDER:**

14.     This Consent Decree and Order shall be in full force and effect for a period of three years after the date of entry of this Consent Decree and Order, or until the injunctive relief contemplated by this Order is completed, whichever occurs later.  The Court shall retain jurisdiction of this action to enforce provisions of this Order for three years after the date of this Consent Decree, or until the injunctive relief contemplated by this Order is completed, whichever occurs later.

**SEVERABILITY:**

15.     If any term of this Consent Decree and Order is determined by any court to be unenforceable, the other terms of this Consent Decree and Order shall nonetheless remain in full force and effect.

- 8 -

**SIGNATORIES BIND PARTIES:**

16.    Signatories on the behalf of the parties represent that they are authorized to bind the parties to this Consent Decree and Order.  This Consent Decree and Order may be signed in counterparts and a facsimile signature shall have the same force and effect as an original signature.

Dated: _____, 2010          PLAINTIFF JEAN RIKER

                                                    _____
                                                    JEAN RIKER

Dated: _____, 2010          PLAINTIFF ANNA ALLEN

                                                    _____
                                                    ANNA ALLEN

Dated: _11/23___, 2010          DEFENDANT MSR CLAREMONT RESORT LP
                                                    dba CLAREMONT HOTEL, CLUB AND SPA

                                                    By: _____
                                                            Christopher Devine
                                                            Vice President

1  Dated: 11/23    , 2010        DEFENDANT PYRAMID ACQUISITION II
2                                MANAGEMENT LP

3

4                                By: _____
5                                    JAMES R. DINA
6                                    VICE President
7

8  APPROVED AS TO FORM:
9

10 Dated: _____, 2010        PAUL L. REIN
11                                CELIA McGUINNESS
                                  LAW OFFICES OF PAUL L. REIN
12
13                                BRIAN GEARINGER
                                  GEARINGER LAW GROUP
14

15

16                                By: _____
17                                    Attorneys for Plaintiffs
                                      JEAN RIKER and ANNA ALLEN
18

19 Dated: 11/23    , 2010         STEVEN R. BLACKBURN
20                                ANDREW J. SOMMER
21                                EPSTEIN BECKER & GREEN, P.C.
22

23

24                                Attorneys for Defendants
25                                MSR CLAREMONT RESORT LP dba
                                  CLAREMONT HOTEL, CLUB AND SPA, and
26                                PYRAMID ACQUISITION II
27                                MANAGEMENT LP
28

                                  - 10 -

Dated: 11/23 , 2010      DEFENDANT PYRAMID ACQUISITION II
MANAGEMENT LP

By: _____
JAMES P. DINA
VICE PRESIDENT

APPROVED AS TO FORM:

Dated: 12/1 , 2010      PAUL L. REIN
CELIA McGUINNESS
LAW OFFICES OF PAUL L. REIN

BRIAN GEARINGER
GEARINGER LAW GROUP

By: _____
Attorneys for Plaintiffs
JEAN RIKER and ANNA ALLEN

Dated: 11/23 , 2010      STEVEN R. BLACKBURN
ANDREW J. SOMMER
EPSTEIN BECKER & GREEN, P.C.

_____
Attorneys for Defendants
MSR CLAREMONT RESORT LP dba
CLAREMONT HOTEL, CLUB AND SPA, and
PYRAMID ACQUISITION II
MANAGEMENT LP

- 10 -

**SIGNATORIES BIND PARTIES:**

16.     Signatories on the behalf of the parties represent that they are authorized to bind the parties to this Consent Decree and Order.  This Consent Decree and Order may be signed in counterparts and a facsimile signature shall have the same force and effect as an original signature.


Dated: _11/30/10_, 2010          PLAINTIFF JEAN RIKER


_____
JEAN RIKER


Dated: _____, 2010          PLAINTIFF ANNA ALLEN


_____
ANNA ALLEN


Dated: _11/23_, 2010          DEFENDANT MSR CLAREMONT RESORT LP
                              dba CLAREMONT HOTEL, CLUB AND SPA


By: _____
    Christopher Devine
    Vice President

- 9 -

CONSENT DECREE AND [PROPOSED] ORDER

**SIGNATORIES BIND PARTIES:**

16.    Signatories on the behalf of the parties represent that they are authorized to bind the parties to this Consent Decree and Order.  This Consent Decree and Order may be signed in counterparts and a facsimile signature shall have the same force and effect as an original signature.

Dated: _____, 2010          PLAINTIFF JEAN RIKER

_____

JEAN RIKER

Dated: _12~5__, 2010          PLAINTIFF ANNA ALLEN

_Anna  Allen_
ANNA ALLEN

Dated: _11/23__, 2010          DEFENDANT MSR CLAREMONT RESORT LP
dba CLAREMONT HOTEL, CLUB AND SPA

By:    _____
        Christopher Devine
        Vice President

- 9 -

1

## ORDER

2

3          Pursuant to stipulation, and for good cause shown, IT IS SO ORDERED.

4                    12/15
      Dated: _____, 2010

5                                              _____
                                              Honorable EDWARD M. CHEN

6

7          IT IS SO ORDERED

8

9          Judge Edward M. Chen

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-11-

# ATTACHMENT A

## ATTACHMENT A TO CONSENT DECREE

For Related Cases:
Allen v. MSR Claremont Resort LP:  3:09-cv-03681-EMC
Riker v. KSL Claremont Resort Inc.:  3:09-cv-00764-EMC

Unless expressly stated otherwise, all work described will fully comply with ADAAG and the California Building Code Title 24-2.

### 1. EXTERIOR PATHS OF TRAVEL

a. Slope of Ramp from Site boundary and Primary Entrance:  The Hotel will provide an accessible van on-demand 24-hour shuttle service from the Tunnel Road site entrance to the main Hotel Entrance.  A new covered, glass-enclosed waiting area will constructed at the entry to the site with a new accessible path of travel from the existing sidewalk along Tunnel Road.  A direct telephone connection to the valet station will be provided.  The waiting area will also be equipped with security camera(s) and a push-button direct connection to 911 service.

b. Path of travel between Main Hotel, Exterior Door and wheelchair lift

    1) The Hotel will create an accessible path of travel connecting the Hotel to the adjacent Health Club building.  It will use either Option #1 or Option #2. Option #1 is the preferable solution, option #2 will only be used if there is an unknown condition that will make the solution infeasible.  Option #1 – establish a new path through the hotel to the spa wing elevator, down the elevator to the exterior, down the existing exterior ramp to the drive aisle and create a new pedestrian walkway within the existing planter adjacent to the building along the drive aisle continuing across the drive aisle to a new pedestrian walkway in the planter adjacent to the boiler room building and ending at the Health Club entry.  Option #2 – establish a new path through the hotel along the spa wing to the rear exit of the building to the exterior, across the existing exterior fire lane and create a new combination ramp/pedestrian walkway in the planter adjacent to the boiler room building and ending at the Health Club entry.

    2) Stairway at rear exit of hotel near spa – The Hotel will install accessible handrails. Contrast Striping – The Hotel will install contrasting striping on each tread.

    3) Wheelchair Lift on Ground Floor – The Hotel will eliminate the platform lift in favor of the new Path of Travel described above.

    4) Sidewalk directly across the crosswalk in front of the wheelchair lift – This Path of Travel will be eliminated and striped crosswalk and curb ramp removed.

### 2. TENNIS COURTS

a. The Hotel agrees to correct the existing path of travel from the rear exit from the Health Club to the four upper level tennis courts, including new way-finding signage.

b. The Hotel will relocate the tennis office functions to the health club so that the tennis office is no longer open to the public.

## 3. ACCESSIBLE PARKING FACILITIES

a. The Hotel will install new ADA and Title 24 parking signage at the entry to the property on Tunnel Road.

b. Parking:  The Hotel will create ten accessible parking stalls, including two which are van-accessible.  Hotel will relocate the stalls to the current Valet area on the opposite side of the Hotel entry and provide new compliant stalls and a new compliant path of travel from the stalls to the entry.  The Hotel will locate as many accessible stalls as possible (up to a total of ten) to the current valet area.  All stalls will be fully compliant.

## 4. CLAREMONT HOTEL SPA INTERIOR ELEMENTS

a. The Hotel will alter the existing spa reception counter to provide a 36" wide transaction surface which is 34" above the finished floor.

## 5. CLAREMONT HOTEL SPA – WOMEN'S SPA

a. The Hotel will relocate the Coffee, Tea and Cucumber Water amenities to accessible height and reach ranges.

b. The Hotel will remediate the door between Women's Lounge and the rest of the facilities by the following actions:

1) The Hotel will adjust the closer pressure door between Women's Lounge and the rest of the facilities so the maximum force required to open the doors is no more than 5 pounds.

2) The Hotel will relocate the protruding table to allow a 60" minimum space on the swing side of the door between Women's Lounge and the rest of the facilities.

3) The Hotel will alter the existing threshold of the door between Women's Lounge and the rest of the facilities to meet the required maximum threshold height of ½".

4) The Hotel will alter the existing landings to provide a level landing not exceeding a maximum slope of 2% in any direction.

c. Platform with Jacuzzi and Whirlpool Tubs will be remediated by the following actions taken by the Hotel:

1) The Hotel will relocate the shut-off valve to an accessible location.

2) The Hotel will replace the handrails on the stairs.

d. Main Shower Room

1) Accessible shower stall:

a) The hotel will relocate the diverter valve, shower wand and grab bars to be accessible.

b) The Hotel will raise the shower drain to eliminate the slope.

    2) Sauna Room:  The Hotel will rehang the door to swing out and install an automatic door closer.

  e. Women's Locker Room

    1) The Hotel agrees to provide a 36" clear path of travel through the locker room.

    2) The Hotel agrees to ensure that 5% of the locker hardware does not require grasping, pinching or twisting of the wrist to operate.

    3) The Hotel agrees to install fully compliant signage on the door to the Spa's men's restroom.

## 6. MEN'S SPA

  a. The Hotel will adjust the push pressure of the entry door to the men's spa so the maximum force required to open the doors is no more than 5 pounds.

  b. The Hotel will relocate the Coffee, Tea and Cucumber Water amenities to accessible height and reach ranges.

  c. The Hotel will remediate the door between the Lounge and the rest of the facilities by taking the following actions:

    1) The Hotel will adjust the push pressure of the door between the men's lounge and the rest of the facilities so the maximum force required to open the doors is no more than 5 pounds.

    2) The Hotel will alter the existing threshold o f the door between men's lounge and the rest of the facilities to meet the required maximum threshold height of ½".

    3) The Hotel will alter the existing landings to provide a level landing not exceeding a maximum slope of 2% in any direction.

  d. The Hotel will provide a 36" clear path of travel within the men's locker room.

  e. The Hotel will install new hardware on 5% of lockers which does not require grasping, pinching or twisting of the wrist to operate.

  f. The Hotel will install drain pipe insulation in the men's locker room.

  g. Men's Spa Restroom

    1) The Hotel will install disabled accessible signage.

    2) The Hotel will remove the urinal screen located between the two urinals.

    3) The Hotel will furr out the side grab bar to make the toilet 18" on center from the wall.

    4) The Hotel will install a shorter water closet fixture to create an accessible clear floor space.

    5) The Hotel will relocate the sanitary seat cover dispenser so it is adjacent to a 30" x 48" clear floor space, and is mounted no higher than 40" on center.

   h.  Hotel agrees to install fully complying handrails on the stairs to the Jacuzzi on raised platform.

   i.  Main Shower Room:  Men's Accessible Shower

       1)  The hotel will remediate the diverter valve, shower seat, shower wand and grab bars to be accessible.

       2)  The Hotel will raise the shower drain to eliminate the slope.

   j.  Treatment Rooms

       1)  The Hotel agrees to make one Vichy, one Duet and two standard treatment rooms fully accessible.

       2)  The Hotel will provide a portable ramped platform to provide necessary height for table transfer in the Vichy room.

## 7.  CLAREMONT HOTEL INTERIOR ELEMENTS – FIRST FLOOR

   a.  Paragon Bar

       1)  The Hotel will rearrange existing furniture in the lounge area to provide a 36" path of travel.

       2)  The Hotel will provide 5% accessible tables for all table types.

       3)  The Hotel will provide a minimum 60" wide lower section of the full service bar for disabled access at 34" maximum height.  This lowered section will be at the end of the bar closest to the private dining room.

       4)  The Hotel will provide a lowered bistro table opposite the lowered end of the bar adjacent to the private dining room.

       5)  Tables along West Wall – The Hotel will adjust the existing farmhouse-style tables to provide a continuous clear 36" path of travel along the windows to the bistro tables and private dining room.  The dining table closest to the private dining room will made accessible.

       6)  Coffee Bar at North End – The Hotel will reconfigure the coffee bar to make all amenities available within reach range and at accessible height.

       7)  Outdoor Dining Deck –

          a)  Exterior Door push pressure – The Hotel will adjust the push pressure of the exterior door to the outdoor dining deck so the maximum force required to open the doors is no more than 5 pounds.

          b)  The Hotel will install a cover plate over the lock on the doors to the deck to provide a 10" high smooth, uninterrupted surface along the bottom of the doors.

          c)  The Hotel will rearrange existing furniture on the outdoor deck to provide a 36" wide path of travel throughout the deck.

          d)  The Hotel will provide 5% accessible tables for all table types.

b. Panorama Room

1) The Hotel will adjust the push pressure of the door between the Paragon Bar and Panorama Room so the maximum force required to open the doors is no more than 5 pounds.

2) The Hotel will adjust the push pressure of the door between the Panorama Room and the Hotel Lobby so the maximum force required to open the doors is no more than 5 pounds.

3) The Hotel will provide 5% accessible tables for all table types.

c. Jordon's Restaurant

1) The Hotel will alter the existing bar to provide clear knee space at the existing lowered section of bar.

2) The Hotel will provide 5% accessible tables for all table types.

d. Business Center

1) The Hotel will lower at least one of the copy machines to accessible heights.

2) The Hotel will raise the desk to provide the required knee clearance.

e. Empire Room on the Lobby Level

1) The Hotel will adjust the push pressure of the exterior door to the Empire Room so the maximum force required to open the doors is no more than 5 pounds.

2) The Hotel will provide 5% accessible tables for all table types.

3) The Hotel, will provide a compliant sloped ramp leading up to the temporary dance floor.

f. Claremont Ballroom

1) The Hotel will adjust the push pressure of the exterior door to the Claremont Ballroom so the maximum force required to open the doors is no more than 5 pounds.

2) The Hotel will provide 5% accessible tables for all table types.

3) The Hotel agrees to provide a portable vertical lift available upon request.

g. Exterior Doors at North End of Main Lobby

1) The Hotel will adjust the push pressure of the exterior balcony door at north end of the main lobby to the Claremont Board Room so the maximum force required to open the doors is no more than 5 pounds.

2) The Hotel will install a new smooth, uninterrupted 10" bottom plate.

3) The Hotel will to raise the exterior deck to remove the threshold level difference.

4) The existing condition will remain.

h.  Alumni Room:  The Hotel will remove the protruding kick-stop on the door.

i.  Board Room

   1)  The Hotel will remove the protruding kick-stop on the door.

   2)  The Hotel will lower the existing house phone so the highest operable part is less than 48" above the finished floor.

j.  Registration Counter:  The Hotel will place a fully-accessible table adjacent to the reception desk.

k.  Horizon Room

   1)  The Hotel will remove the protruding kick-stop to the door.

   2)  The Hotel will install off-set hinges on the door to increase the clear opening width of the door to 32" minimum.

   3)  Portable stage:  The Hotel agrees to provide a portable vertical lift available upon request.

   4)  Banquet Tables:  The Hotel will provide 5% accessible tables for all table types.

l.  Claremont Ballroom:  The Hotel will adjust the push pressure of the door from the lobby so the maximum force required to open the doors is no more than 5 pounds.

m.  Claremont Gift Shop

   1)  Entry Door to the gift shop remains open during business hours.

   2)  Cash Register Height:  the Hotel will install a 36" long shelf directly adjacent to the cash register 34" above the finished floor which will remain clear for use as a transaction counter.

   3)  The Hotel will relocate display furniture to provide 36" path of travel throughout the shop.

n.  Spirits in Stone – Entry Doors

   1)  This door remains open during business hours.

   2)  The Hotel will raise the level landing at the threshold within the store to meet code requirements.

o.  Lobby Level Men's and Women's Restrooms near Jordan's/Meritage Restaurant:  The Hotel will provide directional signage to the reception lobby restrooms.

p.  Lobby Level Men's Restroom – Near Paragon Bar

   1)  Entry Door signage:  The Hotel agrees to install ADA and Title 24 signage.

   2)  The Hotel will adjust the push pressure of the restroom door so the maximum force required to open the doors is no more than 5 pounds.

   3)  The Hotel will install p-trap insulation beneath the sinks.

4) The Hotel agrees to adjust the existing mirror to a height not more than 40" above the finished floor.

5) The Hotel will ensure there is a minimum of 60" from the front of the water closet to the end wall of the stall.

6) The Hotel will relocate the existing water closet so that the toilet is 18" on center from the adjacent wall.

q. Lobby Level Women's Restroom – Near Paragon Bar

1) The Hotel agrees to install ADA and Title 24 signage.

2) The Hotel agrees to adjust the existing mirror to a height not more than 40" above the finished floor.

3) The Hotel will ensure there is a minimum of 60" from the front of the water closet to the end wall of the stall.

4) The Hotel agrees to adjust the existing toilet stall door so it self-closes.

5) The Hotel agrees to relocate the existing water closet so that the toilet is 18" on center from the adjacent wall.

6) The Hotel agrees to relocate the existing sanitary napkin dispenser to an accessible location.

## 8. CLAREMONT HOTEL – INTERIOR ELEMENTS ON SECOND FLOOR

a. Merlot Room

1) The Hotel will remove the protruding kick hold-open device from the entry doors.

2) The Hotel will lower the existing house phone so the highest operable part is less than 48" above the finished floor.

b. Zinfandel Room

1) The Hotel will adjust the push pressure of the door so the maximum force required to open the doors is no more than 5 pounds.

2) The Hotel will remove the protruding kick hold-open device from the entry doors.

3) The Hotel will lower the existing house phone so the highest operable part is less than 48" above the finished floor.

4) The Hotel will provide 5% accessible tables for all table types.

c. Gamay Room

1) The Hotel will adjust the push pressure of the door so the maximum force required to open the doors is no more than 5 pounds.

2) The Hotel will remove the protruding kick hold-open device from the entry.

3) The Hotel will provide 5% accessible tables for all table types.

d.  Cabernet Room

1)  The Hotel will adjust the push pressure of the door so the maximum force required to open the doors is no more than 5 pounds.

2)  The Hotel will remove the protruding kick hold-open device from the entry doors.

3)  The Hotel will lower the existing house phone so the highest operable part is less than 48" above the finished floor.

e.  Riesling Room

1)  The Hotel will adjust the push pressure of the entry door from the Main Corridor so the maximum force required to open the doors is no more than 5 pounds.

2)  The Hotel will remove the protruding kick hold-open device from the entry doors.

3)  The Hotel will adjust the push pressure of the door from the back of the room into the corridor so the maximum force required to open the doors is no more than 5 pounds.

4)  The Hotel will remove the protruding kick hold-open device from the entry doors.

5)  The Hotel will ensure the length of the landing on the pull side of the door is at least 60" by relocating the planter.

6)  The Hotel will lower the existing house phone so the highest operable part is less than 48" above the finished floor.

f.  Living Room

1)  The Hotel will adjust the push pressure of the door so the maximum force required to open the doors is no more than 5 pounds.

2)  The Hotel will remove the protruding kick hold-open device from the entry doors.

3)  The Hotel will provide a 36" path of travel within the Living Room by relocating impeding furniture.

4)  The Hotel will remove or relocate the telephone outside the Living Room to an accessible location.

g.  Mendocino Room

1)  The Hotel will adjust the push pressure of the door on the south side of the room so the maximum force required to open the doors is no more than 5 pounds.

2)  The Hotel will remove the protruding kick hold-open device from the entry doors.

3)  The Hotel will install directional signage stating that the second door leading into this room is accessible.

4)  The Hotel will lower the existing house phone so the highest operable part is less than 48" above the finished floor.

5) The Hotel will adjust the push pressure of the door on the north side of the room so the maximum force required to open the doors is no more than 5 pounds.

6) The Hotel will remove the protruding kick hold-open device from the entry doors.

h. Sonoma Room

1) The Hotel will adjust the push pressure of the entry door so the maximum force required to open the doors is no more than 5 pounds.

2) The Hotel will remove the protruding kick hold-open device from the entry doors.

i. Napa 1 Room

1) The Hotel will adjust the push pressure of the entry door so the maximum force required to open the doors is no more than 5 pounds.

2) The Hotel will lower the existing house phone so the highest operable part is less than 48" above the finished floor.

j. Napa 2 Room

1) The Hotel will adjust the push pressure of the entry door so the maximum force required to open the doors is no more than 5 pounds.

2) The Hotel will lower the existing house phone so the highest operable part is less than 48" above the finished floor.

k. Napa 3 Room

1) The Hotel will adjust the push pressure of the entry door so the maximum force required to open the doors is no more than 5 pounds.

2) The Hotel will lower the existing house phone so the highest operable part is less than 48" above the finished floor.

3) The Hotel will provide 5% accessible tables for all table types.

l. Monterey Room

1) The Hotel will adjust the push pressure of the entry door so the maximum force required to open the doors is no more than 5 pounds.

2) The Hotel will remove the protruding kick hold-open device from the entry doors.

3) The Hotel will lower the existing house phone so the highest operable part is less than 48" above the finished floor.

4) The Hotel will provide 5% accessible tables for all table types.

m. Men's Restroom outside Monterey Room

1) The Hotel will install a unisex accessible restroom across the hall from the entry into the existing restrooms.

9. **CLAREMONT HOTEL – INTERIOR ELEMENTS ON FOURTH FLOOR**

   a. The Hotel will replace the knob hardware on the entry doors leading into the exit stairwells with lever hardware.

   b. Guest Rooms:: The Hotel will renovate ten total guest rooms so they are fully compliant with the current code requirements. Seven of these rooms will have accessible bathtubs and three will have accessible roll-in showers.

10. **HEALTH CLUB COMPLEX**

   a. Primary Entrance to Building on Exterior Side of Fence

      1) The Hotel will attach Velcro to the walk-off mats to prevent them from buckling or raising.

      2) The Hotel will adjust the push pressure of the entry door so the maximum force required to open the doors is no more than 5 pounds.

      3) The Hotel will provide a door landing which will not be less than 48" in length.

   b. The Hotel will provide a lowered section of the reception counter.

   c. The Hotel will attach Velcro to the walk-off mats to prevent them from buckling or raising.

   d. The Hotel will remove the reception gate.

   e. Exterior Health Club Door Adjacent to Gate at Interior End of Reception Counter.

      1) The Hotel will attach Velcro to the walk-off mats to prevent them from buckling or raising.

      2) The Hotel will adjust the push pressure of the entry door so the maximum force required to open the doors is no more than 5 pounds.

   f. Exterior Health Club Door Between Lobby and Pool

      1) The Hotel will attach Velcro to the walk-off mats to prevent them from buckling or raising.

      2) The Hotel will adjust the push pressure of the entry door so the maximum force required to open the doors is no more than 5 pounds.

   g. Coffee Bar and Condiment Counter in Lobby: The Hotel will provide the coffee bar on an accessible counter with all amenities at compliant heights and reach ranges.

   h. Exercise room with treadmills

      1) Exterior Door to Swimming pool area

         a) The Hotel will adjust the push pressure of the entry door so the maximum force required to open the doors is no more than 5 pounds.

         b) The Hotel will remove the existing kick-down door stop.

         c) The Hotel provide a smooth and clear bottom door rail.

2) Path of travel throughout exercise rooms – lobby to treadmill room to spin room: The Hotel will relocate the existing exercise equipment to provide a 36" clear path of travel.

i.  Door between Weight Room and Spin Room:  Door landing on push and pull sides

1) The Hotel will relocate the existing exercise equipment to provide the required door clearances.

2) The Hotel will provide 48" minimum landing length on the push side of the door.

3) The Hotel will provide 60" minimum landing length on the pull side of the door.

j.  Spin Room – Door between weight room and spin room -

1) The Hotel will relocate the existing exercise equipment to provide the required door clearances.

2) The Hotel will provide 48" minimum landing length on the push side of the door.

3) The Hotel will provide 60" minimum landing length on the pull side of the door.

4) Door between treadmill room and spin room

a) The Hotel will adjust the push pressure of the door so the maximum force required to open the doors is no more than 5 pounds.

b) Path of travel on west and east ends of room:  The Hotel will relocate the existing exercise equipment to provide a 36" clear path of travel.

k.  Membership office in basement:  entry door:  The Hotel will adjust the push pressure of the entry door so the maximum force required to open the doors is no more than 5 pounds.

l.  Exterior door to tennis courts

1) The Hotel will adjust the push pressure of the door so the maximum force required to open the doors is no more than 5 pounds.

2) The Hotel will resurface the landing area so it has no slope within the area which exceeds 2% in any direction.

m.  Women's Locker Room

1) The Hotel will install ADA and Title 24 accessible signage at the door.

2) The Hotel will adjust the push pressure of the door so the maximum force required to open the doors is no more than 5 pounds.

3) Locker Room – Bay One

a) The Hotel will relocate the existing bench furniture to provide a minimum 36" wide path to the lockers.

b) The Hotel will install 5% of the locker hardware not requiring grasping, pinching or twisting of the wrist to operate.

4) Swim suit dryer:  The Hotel will lower the dryer fixture to an accessible height.

5) Make-up counter:  The Hotel will lower a 36" wide section of the existing counter to 34" height.

6) Sinks:  The Hotel will alter the existing lavatory countertop and lower one lavatory to an accessible height.

7) Towel dispenser height:  The Hotel will lower one of the towel dispensers to an accessible height.

8) The Hotel will make the designated accessible stall fully accessible, including but not limited to toilet centerline, clear floor space and grab bars.

9) Main Shower Room

   a) The hotel will relocate the diverter valve, shower wand and grab bars to be accessible.

   b) The Hotel will raise the shower drain to eliminate the slope.

10) Jacuzzi, Sauna, and Steam Room

    a) The Hotel will remediate the doormat and door landings to comply with current code requirements.

    b) The Hotel will remediate the paths of travel through, between and within the sauna, steam room, and Jacuzzi so there is a minimum of 36" wide path of travel.

11) Steam Room

    a) The Hotel will remediate the door landing to the steam room and ensure the landing has no less than a 60" minimum length.

    b) The Hotel will remediate the door so there is a minimum of 18 inches of strike edge clearance.

    c) The Hotel will attach Velcro to the walk-off mats to prevent them from buckling or raising.

12) Sauna

    a) The Hotel will remediate the door landing to the sauna room and ensure the landing has no less than a 60" minimum length.

    b) The Hotel will remediate the door so there is a minimum of 18 inches of strike edge clearance.

    c) The Hotel will attach Velcro to the walk-off mats to prevent them from buckling or raising.

13) The Hotel will install a permanent or portable lift to make the Jacuzzi accessible to persons with disabilities.

n. Men's Locker Room

1) The Hotel will install ADA and Title 24 accessible signage at the door to the women's locker room.

2) The Hotel will adjust the push pressure of the door so the maximum force required to open the doors is no more than 5 pounds.

3) Door Landing:  The hotel will relocate the cabinet to ensure the landing is 60".

4) The Hotel will install 5% of the locker hardware not requiring grasping, pinching or twisting of the wrist to operate.

5) The Hotel will lower the suit dryer height so it is no higher than 34" above the finished floor.

6) Urinals and Toilet stalls

   a) The Hotel will reconfigure the area.  The accessible urinal will be switched from the one closeted to the stalls to the one farthest from the stalls.

   b) The accessible stall will be switched from the current location to the other water closet with new partitions, grab bars and compliant outswinging stall door.

7) The Hotel will relocate the wet bag dispenser to an accessible location.

8) The Hotel will relocate the towel dispenser to an accessible location.

9) Main Shower

   a) The hotel will relocate the diverter valve, shower wand and grab bars to be accessible.

   b) The Hotel will raise the shower drain to eliminate the slope.

10) Jacuzzi, Sauna, and Steam Room

    a) The Hotel will remediate the door landings to comply with current code requirements.

    b) The Hotel will install Velcro on walk-off mats to prevent them from buckling or raising.

    c) The Hotel will remediate the paths of travel through, between and within the sauna, steam room, and jacuzzi so there is a minimum of 36" wide path of travel.

    d) Path of Travel to Emergency Shut-Off for the jacuzzi

       (1) The Hotel will remediate the paths of travel to the shut off valve so there is a minimum of 36" wide path of travel.

       (2) The Hotel will remediate the cross slope along the path of travel so it does not exceed 2%.

11) Steam Room

    a) Door landing

    (1) The hotel will reconfigure the clear flood space so the length of the landing on the pull side of the door to the Jacuzzi is not less than 60".

    (2) The Hotel will provide 18" of strike edge clearance for the swing side of the door.

    (3) The hotel will provide a level landing with a maximum slope of not more than 2%.

  b) The Hotel will install Velcro on walk-off mats to prevent them from buckling or raising.

12) Sauna

  a) The Hotel will provide 18" of strike edge clearance for the swing side of the door.

  b) The hotel will provide a level landing with a maximum slope of not more than 2%.

  c) The Hotel will remediate the threshold of the door so it is not higher than ½".

  d) The Hotel will install Velcro on walk-off mats to prevent them from buckling or raising.

13) Children's swimming pool: The Hotel will install a new lift sleeve to accommodate the existing portable pool lift device stored on the pool deck.

14) Outdoor Jacuzzi: The Hotel will install a new lift sleeve to accommodate the existing portable pool lift device stored on the pool deck.

o. Bay View Café

  1) The Hotel will provide 5% accessible tables for all table types on both the interior and exterior seating.

  2) Primary Entrance on North Side of Structure

    a) The Hotel will install Velcro on walk-off mats to prevent them from buckling or raising.

    b) The Hotel will adjust the push pressure of the door so the maximum force required to open the doors is no more than 5 pounds.

  3) Primary Entrance on South Side of Structure: The Hotel will adjust the push pressure of the door so the maximum force required to open the doors is no more than 5 pounds.

  4) Register Height: the Hotel will provide a 36" wide transaction counter that is 34" maximum above the floor at the register location.

  5) Condiment Counter height: the Hotel will relocate the condiments to a lower location within accessible height and reach range requirements.

p. Bathroom Corridor Door at North End of building:  the Hotel will adjust the push pressure of the door so the maximum force required to open the doors is no more than 5 pounds.

q. Men's Restroom near mind/body center

1) The Hotel will install fully compliant ADA and Title 24 signage at entry door.

2) The Hotel will adjust the push pressure of the door so the maximum force required to open the doors is no more than 5 pounds.

3) The Hotel will insulate wrap the hot water pipes on the sinks.

4) The Hotel will install Velcro on walk-off mats to prevent them from buckling or raising.

5) The Hotel will relocate the water closet fixture so the toilet centerline is 18" on center.

6) The Hotel will convert the restroom to an accessible "family" single occupancy room and remove the stall partition.

7) The Hotel will replace and relocate the grab bars to comply with code requirements.

8) The Hotel will relocate the sanitary seat cover dispenser to an accessible location.

9) The Hotel will install a new coat hook at accessible height.

r. Women's Restroom

1) The Hotel will install fully compliant ADA and Title 24 signage at the entry door.

2) The Hotel will adjust the push pressure of the door so the maximum force required to open the doors is no more than 5 pounds.

3) The Hotel will relocate the sink height to provide adequate knee clearance under the sink.

4) The Hotel will install Velcro on walk-off mats to prevent them from buckling or raising.

5) The Hotel agrees to insulate the hot water pipes to the sinks.

6) The Hotel will relocate the tampon dispenser to an accessible location.

7) The Hotel will convert the restroom to an accessible "family" single occupancy room and remove the stall partition.

8) The Hotel will replace and relocate the water closet so the toilet is 18" on center.

9) The Hotel will install Velcro on walk-off mats to prevent them from buckling or raising.

10) The Hotel will raise the floor drain to remove the slope, so the maximum slope in any direction is 2%.

11) The Hotel will replace and relocate the water closet so the flush valve is mounted on the wide side of the fixture.

12) The Hotel will replace and relocate the side grab bar so knuckle space is exactly 1-1/2".

13) The Hotel will relocate the seat cover dispenser to an accessible location not higher than 40" above the finished floor.

14) The Hotel will install a new coat hook at accessible height.

s. Bathroom Corridor Door at Entrance to Group Exercise Studio

1) The Hotel will adjust the push pressure of the door so the maximum force required to open the doors is no more than 5 pounds.

2) The Hotel will install Velcro on walk-off mats to prevent them from buckling or raising.

3) The Hotel will remove the protruding kick-stop to the door.

t. Lobby Door at Entrance to Somatic Studio

1) The Hotel will adjust the push pressure of the door so the maximum force required to open the doors is no more than 5 pounds.

2) The Hotel will remove the protruding kick-stop to the door.

u. Exterior Door to Lobby at Northwest Corner of Building

1) The Hotel will install Velcro on walk-off mats to prevent them from buckling or raising.

2) The Hotel will adjust the push pressure of the door so the maximum force required to open the doors is no more than 5 pounds.

3) The Hotel will remove the protruding kick-stop to the door.

v. Gate in Fence Enclosing health club and Mind and Body center complex:  The Hotel will relocate the exit through the reception and end use of the gate as a public exit.

# ATTACHMENT B

# Attachment B to Consent Decree

For Related Cases:
Allen v. MSR Claremont Resort LP: 3:09-cv-03681-EMC
Riker v. KSL Claremont Resort Inc.: 3:09-cv-00764-EMC


Defendants will implement the and enforce the following policies, which shall be documented in the Hotel Policy and Procedure manual(s). All staff will be trained on the new policies relevant to their duties within 30 days of the policies being established. All new staff shall be trained about the policies relevant to their duties at the time of hiring.


1. The Hotel will adjust and maintain the push pressure of all doors at the facilities so the maximum force required to open the doors is no more than 5 pounds. Staff will check and adjust each door semi-annually, or more frequently if the Hotel receives a complaint.

2. The Hotel will maintain a minimum 36 inch path of travel throughout the seating area of the Paragon Bar and Paragon Bar Deck. Staff will reset the furniture at least once per day.

3. The Hotel will ensure that all items at buffet meals will be provided at an accessible height and within reach range.

4. The doors to the Business Center will be held open at all times the Center is open for business.

5. The doors to the Claremont Gift shop will be held open at all times the shop is open for business.

6. The doors to Spirits in Stone gift shop will be held open at all times the shop is open for business.

7. The Hotel will keep the accessible cash register counter at the Claremont Gift Shop clear for use as a transaction counter.

8. The Hotel agrees to provide a portable vertical lift upon request to facilities with raised platforms or stages at the hotel. Whenever any conference room with a raised platform or stage is being reserved, staff will ask whether the portable wheelchair lift may be required for the stage or raised platform, and provide it at no extra charge whenever requested; the same information will be easily available on the Hotel web site. If the lift(s) used is/are not self-operable, defendant will provide staff trained in lift use for the duration of the event, whenever it is requested, without additional charge.

-1-

9.     The Hotel agrees to provide water in each conference room to replace drinking fountains which are being removed.

10.    The Hotel agrees to provide a minimum of 36" clear path of travel within and through the exercise rooms at the Health Club, as well as accessible door clearances for all entrances and exits to areas with exercise equipment, 48" minimum landing length on the push side of the door and 60" minimum landing length on the pull side of the door.

11.    At the Registration Counter, the Hotel will place a sign offering guest assistance at the accessible table adjacent thereto.  Hotel staff will assist disabled patrons at that table.

# ATTACHMENT C

Attachment C to Consent Decree

For Related Cases:
Allen v. MSR Claremont Resort LP: 3:09-cv-03681-EMC
Riker v. KSL Claremont Resort Inc.: 3:09-cv-00764-EMC

The parties agree that the Hotel shall complete the work listed in Attachment A and implement the policies listed in Attachment B on the following time line:

1.    Install velcro on walk-off mats: Order velcro by November 23, 2010.  Install within 2 weeks of receipt.

2.    Provide a vertical lift (to be used in Claremont and  Horizon room): Order by 12/15/10.

3.    By December 30, 2010, complete the following:


Parking:

- Relocate Parking stalls to the current valet area.  (If relocation of these parking stalls requires a permit that cannot be obtained over the counter, then the work will be completed by May 1, 2011)
- Install  ADA and Title 24 signs at entry to the property on Tunnel Road


Path of Travel from Hotel to Health Club:

- Replace handrails at stair wheelchair lift
- Install contrast striping on each stair treat
- Eliminate platform lift


Throughout the Facilities:

- Institute and enforce a written policy that each public access door and disabled accessible hotel room door, including bathrooms, will be tested for push pressure and adjusted not less than once per year, and in addition within 24 hours of any complaint

1

- Install ADA and Title 24 signs, including but not limited to: Sign for table at reception counter; directional signs near Jordan's directing to lobby restrooms; directional signage to accessible Mendocino Room door
- Remove kick-down door stops
- Wherever furniture is relocated to create an accessible POT, establish and enforce a policy to maintain the accessible configuration

Spa interior Elements (both Men's and Women's Spa Areas):

- Establish and enforce a written policy to keep doors held open at all times
- Relocate coffee, tea, and cucumber water to an accessible height (unless custom fabrication is required; if so, see below)
- Remediate doors between lounges and the rest of the facilities by relocating table(s) to allow 60" min space on the swing side of the door
- Provide a 36" clear path in the locker areas
- Wrap drain pipes with insulation

Men's Spa Restroom:

- Relocate the seat cover dispenser

Paragon Bar and Restaurant:

- Rearrange the furniture in the lounge to provide a 36" clear path of travel
- Provide 5% of all table types with accessible knee clearance (unless custom fabrication required; if so see below)
- Provide lowered bistro tables  (unless custom fabrication required; if so see below)
- Adjust tables at window to get a 36" clearance  (unless custom fabrication required; if so see below)
- Remove coffee bar
- Install a cover plate over the exterior door lock (unless custom fabrication; if so, completed by May 1, 2011)

<u>Outdoor Dining Deck</u>:

- Adjust furniture to get a 36" POT
- Provide 5% of all tables with accessible knee clearance   (unless custom fabrication required; if so see below)

<u>Panorama Room</u>:

- Provide 5% of all tables with accessible knee clearance   (unless custom fabrication required; if so see below)

<u>Jordan's (Meritage) Restaurant</u>:

- Provide 5% of all tables with accessible knee clearance   (unless custom fabrication required; if so see below)
- Establish and enforce the written policy creating a brunch table configuration and serving configurations which ensure all items are presented at an accessible height and within reach range

<u>Business Center</u>:

- Institute and enforce written policy that door to be held open at all times business center is open for business
- Lower 1 copy machine (unless custom fabrication; if so, see below)
- Raise desk for knee clearance (unless custom fabrication; if so, see below)

<u>Empire Room</u>:

- Provide 5% of all tables with accessible knee clearance  (unless custom fabrication required; if so see below)
- Provide ramp segments to temporary dance floor

3

Claremont Ballroom:

- Provide 5% of all tables with accessible knee clearance   (unless custom fabrication required; if so see below)

Exterior Doors at North End of Main Lobby:

- Install a new 10" bottom plate

Reception Check in Counter:

- Install new table with proper knee space   (unless custom fabrication required; if so see below)

Horizon Room:

- Provide 5% of all tables with accessible knee clearance   (unless custom fabrication required; if so see below)

Claremont Gift Shop:

- Institute and enforce written policy that Door to be held open at all times room is open for business
- Install a shelf adjacent to the cash register
- Relocate displays to provide 36" clear POT

Spirits in Stone Gift Shop:

- Institute and enforce written policy that Door to be held open at all times room is open for business
- Raise the landing to be level

<u>Lobby Level Men's Restrooms Near Paragon Bar</u>:

- Insulate Sink P- Traps
- Adjust mirror height
- Relocate toilet to be 18" on Center

<u>Lobby Level Women's Restrooms Near Paragon Bar</u>:

- Adjust mirror height to be no more than 40" AFF
- Relocate toilet to be 18" on Center
- Install self-closer on toilet stall door
- Relocate Sanitary Napkin dispenser to an accessible location

<u>Zinfandel, Gamay, Napa 3, and Monterey Rooms</u>:

- Provide 5% of all tables with accessible knee clearance   (unless custom fabrication required; if so see below)

<u>Reisling Room</u>:

- Ensure length of landing is 60" on pull side by relocating furniture

<u>Living Room</u>:

- Provide a 36" clear POT by relocating furniture

<u>Drinking Fountain Outside of the Monterey Room</u>:

- Remove; establish and enforce a written policy to offer water at the meeting rooms

Hotel Interior Elements on Fourth Floor:

- Replace door knobs with levers at the stairwells (unless custom fabrication required; if so see below)

Health Club Complex Primary Entrance to Building on Exterior Side of Fence:

- Lower/provide counter for coffee and condiments [if permit req'd then include with item 7; if custom fabrication otherwise required, see below]

Health Club Exercise Rooms:

- Rearrange equipment to provide a 36" wide POT
- Rearrange equipment to provide a 48" landing on push side of door and 60" landing on pull side of door

Health Club Women's Locker Room:

- Relocate bench to provide clear POT
- Lower the swim suit dryer
- Lower the towel dispenser

Health Club Women's Jacuzzi, Sauna, Steam Room

- Remediate POT

Health Club Men's Locker Room:

- Relocate furniture from the door area to create an accessible door landing
- Lower the swim suit dryer
- Relocate the towel dispenser
- Relocate the wet bag dispenser

6

Health Club Men's Jacuzzi, Sauna, Steam Room

- Remediate POT

Health Club Exterior Drinking Fountains:

- Provide water for guests

Men's Restroom  by Health Club:

- Wrap hot water pipes

Women's Restroom Near Health Club:

- Wrap hot water pipes

4.      By March 1, 2011: Remediate locker hardware and house phones (lower or
        relocate to accessible location) in the following locations: Living Room, Merlot,
        Zinfandel, Cabernet, Reisling, Mendocino, Napa 1, 2 and 3 and Monterey Rooms
        and Claremont Ballroom.

5.      By May 1, 2011: Install any elements which require custom fabrication.

6.      Four guest rooms, at least one of which has a roll-in shower:  Submit permit
        application(s) no later than March 1, 2011; complete construction within six
        months of permits being granted.

7.      All other work: Submit permit application(s) by July 1, 2011, or if unforeseen
        difficulties beyond the control of the Hotel preclude that deadline for any
        particular permit, by September 1, 2011.  Complete all work no later than
        December 30, 2012.